<span style="color:red">CORRECTED</span>

# In the United States Court of Federal Claims

No. 21-856
Filed: April 14, 2021
Reissued: April 19, 2021*

|  |
|---|
| **DARTON INNOVATIVE TECHNOLOGIES, INC.,** |
| *Plaintiff,* |
| **v.** |
| **UNITED STATES,** |
| *Defendant,* |
| **and** |
| **MILSUP LLC,** |
| *Defendant-Intervenor.* |

*Michelle F. Kantor*, McDonald Hopkins LLC, Chicago, IL, and *Mary F. April*, McDonald Hopkins LLC, West Palm Beach, FL, for the plaintiff.

*Robert R. Kiepura*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Kevin P. Stiens*, U.S. Air Force, and *Christopher J. McClintock*, U.S. Small Business Administration, of counsel, for the defendant.

*Beth V. McMahon*, ReavesColey, PLLC, Chesapeake, VA, for the defendant-intervenor.

## MEMORANDUM OPINION

**HERTLING**, **Judge**

---

* Pursuant to the protective order in this case, the Court initially filed this opinion under seal on April 14, 2021, and directed the parties to propose redactions of confidential or proprietary information. The parties have informed the Court that they have no proposed redactions. The Court hereby releases in full the memorandum opinion of April 14.

The plaintiff, Darton Innovative Technologies, Inc. ("Darton"), challenges a finding by the United States, acting through the Small Business Administration ("SBA") Office of Hearings and Appeals ("OHA"), that it is not a small business for the purposes of an Air Force contract. Darton was the apparent successful offeror for a contract for specialized pilot training at Offutt Air Force Base ("Offutt") in Nebraska. After notification that Darton was the presumptive awardee, the defendant-intervenor, MilSup LLC ("MilSup"), an unsuccessful offeror, filed a size protest with the SBA. MilSup's protest alleged that Darton was not a small business.

The SBA Area Office found that Darton was not a small business under the "identity of interest" affiliation rule, 13 C.F.R. § 121.103(f). The Area Office presumed that Darton was affiliated with a larger contractor, Sonoran Technology and Professional Services, LLC ("Sonoran"), and thus not a small business under 13 C.F.R. § 121.103(f)(2), because more than 70 percent of Darton's revenue during the prior three years was derived from its work as a subcontractor to Sonoran. On appeal, the OHA upheld the Area Office's determination. The plaintiff challenges the decision of the OHA.

The parties have cross-moved for judgment on the administrative record. The Court grants the defendant's and defendant-intervenor's motions for judgment on the administrative record and denies the plaintiff's motion.

## I.    BACKGROUND

### A.    Regulatory Framework

The SBA, as authorized by the Small Business Act, 15 U.S.C. §§ 631-57, sets "detailed definitions [and] standards by which a business concern may be determined to be a small business concern for the purpose of this chapter or any other Act." 15 U.S.C. § 632(a)(2)(A). The SBA establishes "size standards" that represent the largest size that a concern can be and still qualify as a small business for purposes of federal-government programs. *See* 13 C.F.R. § 121.101. "Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS)." *Id.* Typically, size standards are expressed by either annual receipts or number of employees. *See id.* §§ 121.101, 121.201.

To determine if a business concern may be classified as small, the SBA considers, in addition to evaluating whether a business falls under the threshold of a particular size standard, whether a business concern is affiliated with another entity. "In determining the concern's size, SBA counts the receipts, employees, or other measure of size of the concern whose size is at issue and all of its domestic and foreign affiliates . . . ." *Id.* § 121.103(a)(6). If two concerns are "affiliated" under its rules, the SBA considers the size of both concerns and aggregates them in determining whether the concern whose size is at issue is a small business.

In defining "general principles of affiliation," the SBA looks to control: "[c]oncerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists." *Id.* § 121.103(a)(1). The SBA

2

considers in its affiliation determination "the totality of the circumstances, and may find affiliation even though no single factor is sufficient to constitute affiliation." *Id.* § 121.103(a)(5).

One type of affiliation the SBA considers is based on an "identity of interest," pursuant to 13 C.F.R. § 121.103(f):

> Affiliation may arise among two or more persons with an identity of interest. Individuals or firms that have identical or substantially identical business or economic interests (such as family members, individuals or firms with common investments, or firms that are economically dependent through contractual or other relationships) may be treated as one party with such interests aggregated. Where SBA determines that such interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate.

*Id.* § 121.103(f). This "identity of interest" rule establishes that two economically dependent firms may be treated as a single entity unless evidence is put forth that the two entities are indeed separate.

Subparagraph (f)(2) of the "identity of interest" rule outlines a presumption commonly known as the "70-percent rule":

> SBA may presume an identity of interest based upon economic dependence if the concern in question derived 70% or more of its receipts from another concern over the previous three fiscal years.

*Id.* § 121.103(f)(2).

Subparagraph (f)(2)(i) further clarifies that the presumption is rebuttable:

> This presumption may be rebutted by a showing that despite the contractual relations with another concern, the concern at issue is not solely dependent on that other concern, such as where the concern has been in business for a short amount of time and has only been able to secure a limited number of contracts.

*Id.* § 121.103(f)(2)(i) (effective prior to November 16, 2020).[1]

---

[1] This version of the regulation, in place from April 15, 2020, to November 15, 2020, was the version of the regulation effective at the time the SBA issued the plaintiff's size determination. *See* 85 Fed. Reg. 20,821 (April 15, 2020). A new version of this regulation, which is discussed *infra* at IV.B.1(c) of this opinion, became effective on November 16, 2020.

### B.    Facts[2]

#### 1.    Darton's History

Darton was founded by three service-disabled veterans who each served for more than 20 years as Air Force pilots.  (AR 584.[3])  These three partners had all served as lieutenant colonels stationed at Offutt.  While there, they had designed and managed a course of specialized pilot training and served as instructor pilots.  (AR 566.)  In 2010, Darton was established to provide training for flight instructors on specialized aircraft.  (AR 584 & 592.)  The DoD Warfighter flight training, which Darton provides, is offered only at Offutt.  (ECF 51, Am. Compl. ¶ 25.)  Darton classifies itself as a service-disabled, veteran-owned small business ("SDVOSB") operating under NAICS Code 611512 (Flight Training).  (*Id.* ¶ 22.)

Between its establishment in 2010 and 2015, Darton was dormant—it essentially conducted no business.  (*Id.* ¶ 35.)  In 2015, Darton undertook its first activity, working on a federal-government contract as a subcontractor to Sonoran.  (AR 715.)  As Sonoran's subcontractor, Darton provided specialized flight-instructor training at Offutt using the training curriculum Darton's owners had developed when they served as instructors at Offutt.  (*Id.*)  Darton performed on this contract for Sonoran from 2015 until March 2020 and continued to do so as the contract term was extended until March 2021.  (Am. Compl. ¶ 27.)

#### 2.    Solicitation

On February 18, 2020, the U.S. Air Force Air Combat Command issued Solicitation FA4890-20-R-0006 for Contract Aircrew Training and Courseware Development and Selective Flight Training at Offutt.  (AR 1.)  The solicitation was a follow-on contract for the training contract for which Darton has served as a subcontractor to Sonoran since 2015.  (AR 68, 232.)  The solicitation sought specialized flight training for various aircrew specialties, syllabus and curriculum design, and training management and oversight for sensitive military operations.  (Am. Compl. ¶ 14; AR 90.)  The solicitation set aside the contract for a SDVOSB under NAICS Code 611512.  (AR 1.)  A business under NAICS Code 611512 is considered small if it meets a size standard of $30 million, as measured, at the time of this solicitation, by a three-year average of the business's annual receipts.

Darton submitted a timely proposal in response to the solicitation.  (AR 226.)  On September 8, 2020, the Air Force notified Darton that it was the apparent successful offeror for the contract.  (AR 362.)  The Air Force also notified unsuccessful offerors, including MilSup, that Darton was the presumptive awardee.  (AR 363.)

---

[2] This section constitutes the Court's findings of fact, although the facts are largely undisputed.

[3] Citations to the administrative record (ECF 22) are denoted as "AR" with the pagination reflected in that record.

On September 16, 2020, MilSup filed a size protest with the SBA Office of Government Contracting, Area IV ("Area Office") alleging that Darton was not a small business. (AR 401.) MilSup argued that Darton was affiliated with Sonoran, and that treating it as a small business violated the "identity of interest" rule. MilSup argued that because Darton intended for Sonoran to serve as its primary subcontractor on the new contract, Darton's proposal also violated the SBA's "ostensible subcontractor" rule. (AR 404 (citing 13 C.F.R. § 121.103(h)(4)).) Due to MilSup's protest, the Air Force issued a stop work order on the contract on September 24, 2020. (AR 478.)

On September 23, 2020, the Area Office notified Darton of the size protest. (AR 938.) Darton submitted a response, disputing MilSup's allegations regarding its size, to the Area Office on October 1, 2020.[4] Darton argued that it was not affiliated with Sonoran under either the "ostensible subcontractor" or "identity of interest" rule. It acknowledged that more than 70 percent of its revenues had been derived from Sonoran but submitted evidence that, it argued, rebutted the "identity of interest" rule's 70-percent presumption. Darton's evidence included, among other items, a copy of SBA Form 355 ("Information for Small Business Size Determination"); Darton's articles of incorporation and bylaws; a declaration by Darton's president, Maynard "Tony" Dunning; its bid proposal; and financial documents. (AR 579-816.) On October 16, 2020, the SBA requested that Darton submit financial information on Sonoran. (AR 817.) On October 18, Sonoran submitted to the SBA three years of tax returns. (AR 821.)

### 3.      Area Office Determination

On October 20, 2020, the Area Office issued Size Determination No. 04-2020-044 in response to MilSup's size protest. (AR 938.) The Area Office began by defining the relevant standard for an affiliation through an identity of interest:

> Section 121.103(f) provides that affiliation may arise through an identity of interest which includes "economically dependent through contractual or other relationships." In these situations, one firm is so economically dependence [*sic*] on another that the two firms become affiliated. SBA regulations have provided a test to see if firms are economically dependent. "SBA may presume an identity of interest based upon economic dependence if the concern in question derived 70% or more of its receipts from another concern over the previous three fiscal years.["]

(AR 939 (citing 13 C.F.R. § 121.103(f)(2)).)

---

[4] A business subjected to a size protest has three working days to respond to a size protest but may request an extension. 13 C.F.R. § 121.1008(c). Darton submitted a provisional response on September 29, 2021, but requested and was granted an extension until October 1, 2020, to submit a revised response. (AR 566-71.)

5

On the "identity of interest" issue, the Area Office found that "[a] review of Darton's financial statements show[s] that ***100%*** of [its] receipts for each of the last three fiscal years have been from Sonoran." (*Id.* (emphasis in original).)  The Area Office noted that "[t]he test in § 121.103(f)(2) is not dispositive." (*Id.*)  It explained the test for rebutting the presumption of economic dependence:

> The presumption of economic dependence can be rebutted "by a showing that despite the contractual relations with another concern, the concern at issue is not solely dependent on that other concern, such as where the concern has been in business for a short amount of time and has only been able to secure a limited number of contracts."

(*Id.*)

Based on this standard, the Area Office determined that "Darton has been operating since 2010 and been active as a subcontractor on a federal prime contract since 2015, thus Darton cannot convincingly claim that it has been 'in business for a short amount of time.'" (*Id.*)  It also found that "[t]he sole source of the company's receipts has been the work performed as a subcontractor to Sonoran on the incumbent contract." (AR 940.)

The Area Office noted that "[m]uch of Darton's evidence for the rebuttal of identity of interest relates to sections from a U.S. Court of Federal Claims case," citing *Veterans Tech., LLC v. United States* ("*Vet Tech I*"), 133 Fed. Cl. 146 (2017), *after remand*, 138 Fed. Cl. 121, 129 (2018) ("*Vet Tech II*").  (AR 939.)  The Area Office rejected Darton's reliance on *Vet Tech I*, finding that "much of the language which the company relies on is not from the Court's decision but rather from the Motion for Judgment submitted by the plaintiffs in the case" and concluding that the decision in *Vet Tech I* involved an issue "unrelated to this case." (AR 939-40.)

Ultimately, the Area Office concluded that Darton was economically dependent on and affiliated with Sonoran under the "identity of interest" rule.

On MilSup's "ostensible subcontractor" claim, the Area Office first set forth the standard: "Section 121.103(h)(4) provides that affiliation may exist when a prime contractor engages a subcontractor who performs the 'primary and vital requirements' of the contract or if the prime contractor is 'unusually reliant' on the subcontractor." (AR 940.)

The Area Office considered whether Darton was unusually reliant on Sonoran under the four-part test of *Size Appeal of DoverStaffing*, SBA No. SIZ-5300, 2011 WL 7101064 (Dec. 14, 2011).[5]  It determined that, although Sonoran was the incumbent contractor and ineligible to

---

[5] Under *DoverStaffing*'s four-part test, the SBA will consider whether: "(1) the proposed subcontractor is the incumbent contractor and is ineligible to compete for the procurement; (2) the prime contractor plans to hire the large majority of its workforce from the subcontractor;

compete for the procurement, Darton did not meet the other *Dover Staffing* criteria and was therefore not unusually reliant on Sonoran. Similarly, it found that Darton would perform the primary and vital requirements of the contract. (AR 941.) The Area Office concluded that treating Darton as a small business did not violate the "ostensible subcontractor" rule. (AR 942.)

Because Darton was affiliated with Sonoran under the "identity of interest" rule, the SBA was required to include Sonoran's receipts in calculating Darton's size. The two firms' combined receipts exceeded the size standard for the NAICS code assigned to the procurement; the Area Office accordingly found that Darton "was other than a small business concern for the applicable size standard of $30.0 million." (AR 943.) As a result, Darton was not qualified to receive the contract award.

### 4.      Appeal to the OHA

On November 3, 2020, Darton appealed the Area Office's decision to the OHA. (AR 944.) In its appeal, Darton contested the Area Office's interpretation of the 70-percent presumption. It argued that the SBA may, but is not obligated to, invoke the 70-percent presumption in determining identity of interest. (AR 949.) It also questioned what evidence the Area Office considered because the decision based its conclusion on the fact that Darton had not been in business for only a short time: "[T]he Area Office presumed that the amount of time in business is the only way to rebut the presumption, but clearly it is not." (AR 951.)

In arguing that the Area Office applied too narrow a test, Darton relied on the preamble to the 2016 amendment to 13 C.F.R. § 121.103 ("2016 Preamble"), in which the SBA explained that "firms should be permitted to make any arguments and provide any evidence that they believe demonstrates that no affiliation should be found." 81 Fed. Reg. 34243, 34252, 2016 WL 3038132 (May 31, 2016). The 2016 Preamble noted that the "SBA does not want [the 70-percent presumption] to negatively impact start-ups or any other company that operates in a unique industry." *Id.* As a result, the 2016 Preamble clarified that the 70-percent presumption is "not a bright line rule." *Id.*

Darton asserted that the Area Office should have considered Darton's evidence that it operates in a unique industry. (AR 953.) According to Darton, the factual background it provided in its emailed response to the size protest demonstrated the uniqueness of the industry in which it operates. Darton emphasized that the solicitation at issue is the Air Force's Air Combat Command's largest and most complex; there are only 33 aircraft in the world for which the training is relevant; and Offutt is the only place where these aircraft are based. (AR 592.)

_____

(3) the prime contractor's proposed management previously served with the subcontractor on the incumbent contract; and (4) the prime contractor lacks relevant experience and must rely upon its more experienced subcontractor to win the contract." (AR 941 (citing *Dover Staffing*, 2011 WL 7101064).)

Darton also directed the OHA to new language the SBA added to the 70-percent rule, effective November 16, 2020. As revised, 13 C.F.R. § 121.103(f)(2)(i) now includes language related specifically to contractual relations between two allegedly affiliated firms:

> This presumption may be rebutted by a showing that despite the contractual relations with another concern, the concern at issue is not solely dependent on that other concern, such as where the concern has been in business for a short amount of time and has only been able to secure a limited number of contracts *or where the contractual relations do not restrict the concern in question from selling the same type of products or services to another purchaser*.

13 C.F.R. § 121.103(f)(2)(i) (effective November 16, 2020) (emphasis added). Darton argued that this addition to the rule clarifies that the rule is about "making economic dependence more about the issue of control." (AR 960 (quoting 85 Fed. Reg. 66,146, 66,147 (Oct. 16, 2020)).)

In addition to its appeal, Darton filed a motion to supplement the record before the OHA pursuant to 13 C.F.R. § 134.308(a). (AR 1057.) Darton sought to include five types of evidence: a summary report of procurement activity for NAICS Code 611512 and a fact sheet on the aircraft involved in the procurement; a supplemental declaration from its president, Tony Dunning; a declaration from Paul Smiley, majority member and manager of Sonoran; the subcontract between Darton and Sonoran; and the preambles to the prior and new 70-percent rules from the Federal Register. MilSup filed a response in opposition to both Darton's size appeal (AR 1342) and its motion to supplement the administrative record (AR 1307).

### 5.    OHA Determination

On December 10, 2020, the OHA issued its decision on Darton's appeal. (AR 1359.) As a threshold issue before turning to the merits, the OHA denied Darton's motion to supplement the record and excluded its proffered evidence, save for the Federal Register excerpts, which the OHA concluded were legal authority. (AR 1363-64.) The OHA denied the motion because "evidence that was not previously presented to the Area Office is generally not admissible and will not be considered by OHA." (*Id.*)

After summarizing the "identity of interest" rule of 13 C.F.R. § 121.103(f), the OHA began its analysis by emphasizing the strength of the presumption:

> Once heavy economic dependence is shown, OHA has seldom if ever found the presumption rebutted. The challenged concern must show it is no longer dependent upon its alleged affiliate. Where there is such heavy dependence during the three years preceding certification, the challenged firm must demonstrate it is no longer economically dependent upon its alleged affiliate, and the alleged affiliate no longer has the power to control it.

(AR 1364 (citing *Core Recoveries, LLC*, SBA No. SIZ-5723, at 5 (2016)).)

Applying the rule to Darton, the OHA found that Darton was affiliated with Sonoran:

> Here, [Darton] is, and has been for approximately five years, dependent for 100% of its revenue on its subcontract with Sonoran. There is nothing in the record to show any break with Sonoran, indeed, Sonoran will be subcontracting with [Darton] on this procurement. [Darton's] argument the Area Office failed to explain its decision is meritless. The fact that [Darton] is wholly dependent upon Sonoran for its revenue and is not taking any steps to separate itself, is more than enough to establish affiliation through identity of interest due to economic dependence.

(AR 1364.)

In regard to the evidence Darton submitted to rebut the 70-percent presumption, the OHA found that the Area Office had "correctly noted that [Darton] had not been in business for a short period of time, and therefore had not rebutted the presumption in the manner provided for in the regulation." (AR 1365.)

In response to Darton's argument that the words "such as" in the regulation leave open other avenues in addition to the length of time a firm has been in business to rebut the presumption, the OHA identified two ways to rebut the presumption:

> [Darton] can point to no support in the regulation or the case law for any way to rebut the presumption other than showing that the concern had been in business a short time or showing a break with Sonoran, which [Darton] cannot do.

(*Id.*)

Beyond the preamble, the OHA found that Darton provided no other support for the use of "unique industry" evidence to rebut the presumption of economic dependence. (*Id.*) The OHA also rejected Darton's argument in reliance on the revision of the regulation effective November 16, 2020, because it was "inapplicable" to Darton's appeal on account of its effective date.

The OHA concluded that "[Darton] cannot establish that the Area Office erred in drawing the presumption that [Darton] was economically dependent upon Sonoran, a firm which provides 100% of its revenue." (*Id.*) Thus, Darton had "failed to establish that the size determination was based on any error of fact or law," and the OHA affirmed the Area Office's size determination. (*Id.*)

## 6. Procedural History

The plaintiff filed a complaint in this court on February 3, 2021, challenging the OHA's decision to uphold the Area Office's finding that it is not a small business. (ECF 1, as amended by ECF 51.) The Court granted MilSup's motion to intervene. (ECF 23.) The defendant filed

9

the administrative record on February 10, 2021.  (ECF 22.)  On February 15, 2021, the plaintiff moved to supplement the administrative record with the justifications, approvals, determinations, and findings, if any, prepared by the Area Office in support of its size determination.  (ECF 24, as amended by ECF 29.)  The Court denied Darton's motion to supplement the administrative record.  (ECF 37.)

The parties have cross-moved for judgment on the administrative record.  The matter has been fully briefed, and the Court heard oral argument on April 6, 2021.

## II.    JURISDICTION AND STANDING

The Court of Federal Claims has jurisdiction over bid protests pursuant to the Tucker Act, 28 U.S.C. § 1491(b), which confers on this court jurisdiction over actions "by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  *Id.* § 1491(b)(1).

The Tucker Act's waiver of sovereign immunity "covers a broad range of potential disputes arising during the course of the procurement process."  *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1381 (Fed. Cir. 2012).  The Federal Circuit has held that challenges to decisions by SBA's OHA fall "within the scope of jurisdiction granted under the Tucker Act" because such challenges "are actions 'in connection with a proposed procurement.'"  *Palladian Partners v. United States*, 783 F.3d 1243, 1254 (Fed. Cir. 2015) (quoting 28 U.S.C. § 1491 and citing *RLB Contracting, Inc. v. United States*, 118 Fed. Cl. 750, 756 (2014) ("Decisions of SBA's OHA are reviewable under [the Tucker Act's] grant of authority. . . .")).  The court reviews the OHA's determination, not any determination prefatory to it.  *See Palladian Partners*, 783 F.3d at 1255.

To invoke this court's jurisdiction, a plaintiff must establish standing by demonstrating that it is an "interested party."  28 U.S.C. § 1491(b)(1).  To do so, the plaintiff must "show that it is (1) an actual or prospective bidder, and (2) that it has a direct economic interest" in the procurement.  *CGI Federal Inc. v. United States*, 779 F.3d 1346, 1348 (Fed. Cir. 2015).  Darton bid on the solicitation and received a pre-award notice that it was the presumptive successful offeror.  (AR 362.)  The plaintiff was an actual bidder with a direct economic interest in the solicitation, and therefore has standing to bring this protest.  Accordingly, the Court has jurisdiction over this case.

## III.   STANDARD OF REVIEW

On a motion for judgment on the administrative record pursuant to RCFC 52.1, the court limits its review to the administrative record before it and makes findings of fact as if it were conducting a trial on a paper record.  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005).  Unlike a motion for summary judgment under RCFC 56, issues of material fact will not foreclose judgment on the administrative record.  *Id.* at 1356.  The court determines whether, "'given all the disputed and undisputed facts, a party has met its burden of proof based on the

evidence in the record.'" *Integral Consulting Servs., Inc. v. United States*, 140 Fed. Cl. 653, 657 (2018) (quoting *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006)).

Just as in other bid protests, the court evaluates challenges to the OHA's decision affirming the Area Office's size determination under the Administrative Procedure Act standard of review. *Paradigm Eng'rs & Constructors, PLLC v. United States*, 147 Fed. Cl. 487, 494 (2020). An agency procurement action may only be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *see* 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706(2)(A)). Relief may only be granted upon the finding that "the procurement official's decision lacked a rational basis." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001).

The court's review of an agency's decision is "highly deferential." *Advanced Data Concepts v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As this Court recently explained, *Obsidian Sols. Grp. v. United States*, No. 20-1602, 2021 WL 1309148 at *6, "'special deference' is paid to decisions by the OHA due to the SBA's 'quasi-technical administrative expertise and . . . familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme.'" *Id.* (quoting *Eagle Design and Mgmt., Inc. v. United States*, 57 Fed. Cl. 271, 273 (2002) (citation and internal quotation omitted)).

The plaintiff challenges the deference due to the OHA, arguing that its legal conclusions are not due deference when they contravene a statute or regulation. (ECF 38-1 at 13-14; ECF 45 at 3.) It is a truism that an agency may not violate a clear statutory or regulatory requirement, and deference to an agency's expertise will not save an interpretation that does so. However, the "special deference" due to the OHA is appropriate when the OHA is interpreting the SBA's own rules, which implement "a comprehensive regulatory scheme" in an intricate manner that a non-expert court must be careful not to disrupt. *See Eagle Design*, 57 Fed. Cl. at 271; *Ceres Env't. Servs., Inc. v. United States*, 52 Fed. Cl. 23, 33 (2002). Unless the plaintiff can show that the OHA acted in violation of an unambiguous statutory or regulatory requirement, special deference is appropriate.

## IV.    DISCUSSION

The plaintiff does not dispute that it derived 100 percent of its revenue from Sonoran over the five-year period preceding its bid in response to the solicitation. (Am. Compl. ¶ 20.) The plaintiff argues that (1) the SBA did not properly interpret its regulations related to what evidence may permissibly rebut the 70-percent presumption, and (2) the SBA should have found Darton's evidence to have rebutted the presumption.

The Court begins by evaluating the scope of evidence that the plaintiff was entitled to present to contest the size protest. The Court then considers the specific arguments the plaintiff raises to rebut economic dependence before considering the plaintiff's argument regarding control.

A.      **Permissible Evidence**

To rebut the presumption of an identity of interest based on economic dependence, 13 C.F.R. § 121.103(f)(2)(i) provides:

> This presumption may be rebutted by a showing that despite the contractual relations with another concern, the concern at issue is not solely dependent on that other concern, such as where the concern has been in business for a short amount of time and has only been able to secure a limited number of contracts.

13 C.F.R. § 121.103(f)(2)(i) (effective prior to November 16, 2020).

The plaintiff argued in its appeal before the OHA that "the words 'such as' in the regulation leave open the possibility of other ways to rebut the presumption, and the Area Office erred in not finding one of them for [Darton]." (AR 1365.) In response to the plaintiff's argument, the OHA noted:

> [Darton] can point to no support in the regulation or the case law for any way to rebut the presumption other than showing that the concern had been in business a short time or showing a break with Sonoran, which [Darton] cannot do.

(*Id.*)

The plaintiff argues that "[t]he OHA's conclusion that the only way the 70% Presumption could be rebutted is by being in business a short amount of time is both contrary to law and lacks a rational basis." (ECF 38-1 at 22.) According to the plaintiff, "[t]he 70% Presumption expressly indicates that it may be rebutted in any number of ways" and the "such as" clause is "merely an example." (*Id.* at 22-23.) Moreover, as it did before the OHA, Darton points to the preamble of the Federal Register notice accompanying the version of 13 C.F.R. § 121.103(f) promulgated in 2016, which explains that "SBA believes that firms should be permitted to make any arguments and provide any evidence that they believe demonstrates that no affiliation should be found." 81 Fed. Reg. at 34252. Darton therefore argues that the OHA's decision violates the regulation on its face and is, accordingly, contrary to law and must be overturned.

The defendant "acknowledge[s] that the regulation provides a non-exhaustive list [of] methods to rebut the presumption." (ECF 56 at 4.) The defendant has "no dispute" that the phrase "any evidence" from the preamble to the regulation allows for a wide range of evidence to be used to rebut the presumption. The defendant instead disputes that the plaintiff has demonstrated through its evidence that no economic dependence should be found. (*Id.* at 10.) The defendant-intervenor similarly agrees that companies have "successfully established their financial independence through other means" than the examples the regulation provides, but that Darton has not presented sufficient proof of its independence. (ECF 57 at 4.)

Much of the dispute regarding the appropriate evidence for Darton to submit to rebut successfully the 70-percent presumption centers on whether the affiliation rule is concerned with

12

"control" or with "economic dependence." The parties agree that a broad range of evidence may be presented to the SBA but disagree as to the nature of what the evidence must prove to be both relevant and persuasive in rebutting the presumption.

Darton argues that the focus of the SBA's affiliation rules, including the "identity of interest" rule, is on "control." (ECF 38-1 at 15-16 (citing 13 C.F.R. § 121.103(a)(1))). The defendant and defendant-intervenor emphasize instead the language of § 121.103(f), which focuses on economic dependence as a means of inferring the power to control. (ECF 41 at 15-16; 40-1 at 9.) As the defendant argues, § 121.103(f)(2)(i) opens with a reference to "[t]his presumption"; the "this" obviously refers to the presumption established in paragraph (2), which is a presumed "identity of interest based upon economic dependence." Because the relevant portion of the regulation is concerned specifically with "economic dependence," the defendant and defendant-intervenor argue, the evidence submitted to rebut the presumption must go to that specific issue and not the broader issue, as Darton would have it, of "control."

The Court finds that the OHA's interpretation and application of 13 C.F.R. § 121.103(f)(2)(i) was neither arbitrary and capricious nor contrary to law. The OHA's decision did not prohibit the plaintiff from introducing "any evidence" to rebut economic dependence. Rather, the Court reads the OHA's decision to have permitted the introduction of other evidence beyond a demonstration that a concern has been in business a short time, so long as that evidence is geared toward "showing a break" with the other firm. While the OHA does not define what it meant by "showing a break," it is evident from the context that "showing a break" refers to putting forth evidence of Darton's economic independence from Sonoran.

The key point is not that Darton's evidence was not considered. The OHA decision makes specific reference to the evidence Darton submitted. (AR 1361-63.) Rather, the point is that Darton's evidence did not address the question of its economic dependence on Sonoran. The OHA did not reject the plaintiff's evidence because it was impermissible rebuttal evidence under the regulation; the OHA found the plaintiff's evidence insufficient to overcome the presumption because it was immaterial. The plaintiff failed to demonstrate how its evidence—showing it was a wholly separate entity, over which Sonoran exercised no control—was material to the issue of whether it was or was not economically dependent on Sonoran.

The OHA did not bar the plaintiff from submitting evidence it was not economically dependent on Sonoran. Darton was permitted to rebut the 70-percent rule with evidence beyond the amount of time it has been in business or the number of contracts it has had. The OHA merely required that Darton's evidence be directly tailored to the question of economic dependence by "showing a break" from Sonoran, a requirement that the Court finds consistent with the regulation. Accordingly, the Court rejects Darton's claim that the OHA's decision contravenes 13 C.F.R. § 121.103(f)(2).

## B.     Darton's Evidence

Having found that the OHA did not erroneously limit the scope of evidence the plaintiff was entitled to present to rebut the presumption, the Court turns next to Darton's argument that

the OHA either failed to consider or rejected its evidence that showed it was economically independent and not under the control of Sonoran.

As the OHA noted, to challenge the presumption of affiliation "the challenged firm must demonstrate it is no longer economically dependent upon its alleged affiliate, and the alleged affiliate no longer has the power to control it." (AR 1364.) Darton challenges (1) the OHA's decision regarding its rebuttal of the presumption of economic dependence and (2) the OHA's failure to consider its evidence regarding control. The Court turns first to the plaintiff's evidence related to economic dependence before discussing the question of control.

### 1. Economic Dependence

The plaintiff presents four points related to its rebuttal of the presumption of economic dependence. First, the plaintiff argues that the OHA should have considered the uniqueness of the industry in which the plaintiff operates as a means of rebutting the presumption. Second, the plaintiff points the Court, as it did the OHA, to the *Veterans Technology* cases, arguing that they support its claims. Third, the plaintiff argues that the preamble and text of the November 2020 rule amending 13 C.F.R. § 121.103(f)(2)(i) should have been used by the OHA as evidence of the SBA's focus on control. Finally, the plaintiff alleges that the OHA erroneously excluded evidence in its review of the Area Office's decision.

### a. Unique Industry

The 2016 Preamble explained that the "SBA believes that firms should be permitted to make any arguments and provide any evidence that they believe demonstrates that no affiliation should be found." 81 Fed. Reg. at 34252. It further provided that the "SBA does not want [the 70-percent presumption] to negatively impact start-ups or any other company that operates in a unique industry. That is precisely why [the 70-percent presumption] is not a bright line rule, but a rebuttable presumption." *Id.*

Darton argues that the OHA erroneously rejected evidence that it operates within a unique industry. In rejecting Darton's "unique industry" argument, the OHA noted that:

> [Darton] points to the phrase in the preamble to the rule: "SBA does not want this new rule to negatively impact start-ups or any other company that operate in a unique industry." 81 Fed. Reg. 34243, 34252 (May 31, 2016). However, beyond this phrase in the preamble, [Darton] can point to nothing in the regulation or case law which supports the use of "unique industry" to rebut the presumption that [Darton] is economically dependent upon a firm which provides 100% of its revenue.

(AR 1365.)

First, Darton argues that the OHA rejected its evidence because it found that the only way Darton could rebut the presumption was to show that it had been in business for a short amount of time. (ECF 38-1 at 13.) The Court has addressed and rejected this argument above.

14

Second, Darton argues that the 2016 Preamble "directly reflected the SBA's intent" at the time of promulgating the regulation. (*Id.* at 31, citing *AT&T Corp. v. F.C.C.*, 841 F.3d 1047, 1054 (D.C. Cir. 2016) ("An interpretation at odds with the agency's expressed intent at the time of adoption enjoys no judicial deference.").) To disallow the "unique industry" argument would be to contravene the SBA's intent, as set forth in the 2016 Preamble, behind the regulatory provision.

The defendant argues that Darton has failed to demonstrate how the alleged facts in support of its "unique industry" argument establish that it was not economically dependent upon Sonoran. Even if Darton operates in a unique industry, that fact alone does not contradict the evidence that "Sonoran has the ability to strip Darton of all its revenue through a single subcontract cancellation." (ECF 41 at 17.) Further, the defendant argues that Darton provided no evidence that it does in fact operate in a unique industry. The only evidence Darton put forth to show the uniqueness of the industry in which it operates, the defendant argues, was "a brief description of the scope of work of the contract." (*Id.* at 21.) Citation to the scope of work contained in a government solicitation does not establish an industry for that service; if so, the defendant argues, any scope of work could be used to create its own industry. (*Id.*)

The defendant-intervenor argues further that the relevant industry is NAICS Code 611512 for "Flight Training." Total governmental spending in NAICS Code 611512 was $1.08 billion in FY 2012-2016. That amount, the defendant-intervenor argues, "is hardly indicative of a 'unique, highly specialized industry.'" (ECF 40-1 at 13, quoting AR 999.) Darton's services should not be considered so limited as to apply only to the specific types of aircraft involved in this procurement when Darton is generally capable of providing training services for numerous types of aircraft, and it admits that it has pursued contracts for training other than the Offutt contract at issue. (*Id.* at 14, citing AR 996.)

The Court need not determine what type of evidence would be appropriate to demonstrate the existence of a unique industry or whether Darton was part of such an industry, because, on the record before it, the OHA did not err in rejecting Darton's "unique industry" argument. The Court may only set aside the OHA's findings if its decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *see* 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706(2)(A)). Here, Darton did not put forth sufficient evidence to suggest that it operates in a unique industry, or that its place as part of a unique industry was the cause of its economic dependence.

The Court appreciates the mission-critical nature of the training Darton provides to the Air Force, the specialized nature of the aircraft for which it offers training, and the experience Darton's founders gained during their Air Force service, including at Offutt. None of these facts, either alone or together, establishes the existence of a unique industry of which Darton is a part. The record before the Area Office and the OHA is devoid of actual evidence that the OHA failed to consider that would have led to a finding of Darton's independence related to or supporting Darton's argument regarding the uniqueness of the industry in which it operates. Apart from its citation to the solicitation's statement of work and the declaration of its president, Darton did not support its "unique industry" argument with evidence relevant to the determination that the OHA had to make about whether Darton was economically dependent on Sonoran. Darton made no

effort to define the parameters of the allegedly unique industry. Darton asserts its uniqueness without defining the industry and providing evidence showing how narrow, specialized, and "unique" that industry is, which is insufficient to create a record on which the OHA, or this Court, could evaluate Darton's claim. Because of this basic failure of proof, the Court rejects the plaintiff's "unique industry" argument.

**b.**      **Case Law**

In support of its argument that the OHA erroneously upheld the Area Office's decision, the plaintiff cites *Vet Tech I*, 133 Fed. Cl. 146 (2017). The plaintiff contends that "the application of law in *Vet Tech I* is extremely similar to how the SBA erroneously applied the law in this case." (ECF 38-1 at 25.)

In *Vet Tech I*, a firm, ECS, acquired another firm, Paradigm, and assumed responsibility for a prime contract originally awarded to Paradigm. *Id.* at 149. Some of Paradigm's former employees left ECS to form their own firm, MDW. In reliance on the specialized knowledge of the departing employees, ECS provided MDW with a subcontract to continue to work on the project. Several years later, MDW and another firm established a joint venture, named Veterans Technology, to pursue missile-defense contracts. *Id.* at 150. The OHA determined that MDW was affiliated with ECS through an identity of interest and was therefore other than small. On appeal, a judge of this court held that, even though MDW derived more than 70 percent of its revenue from ECS, the OHA's finding of an identity of interest could not be sustained.

The court first noted that MDW's subcontract with ECS was obtained at the direction of the government. *Id.* at 161. Paradigm had completed certain task orders for the government, and when the former Paradigm employees decided to leave ECS to form MDW, the government directed ECS to subcontract with MDW to benefit from the former employees' expertise. The court additionally noted factual issues the OHA had failed to consider: MDW received a large portion of its revenue from ECS, but the work was divided into multiple subcontracts; MDW competed with other contractors to win several of its contracts with ECS; the subcontracts accounted for just over half of MDW's revenue; and MDW had a backlog of non-ECS work it could perform if it ceased conducting business with ECS. *Id.* at 162. The court held that the OHA's decision was arbitrary and capricious and remanded the case to the OHA to ascertain whether the agency induced MDW to enter into a subcontract with ECS and to consider MDW's evidence that it was not economically dependent on ECS.[6] *Id.*

---

[6] On remand, the SBA Area Office issued a new size determination and found that MDW was small. It concluded that MDW had rebutted the presumption of identity of interest by submitting evidence sufficient to show that the government had directed ECS to subcontract with MDW and that there was not general economic dependence by MDW on ECS. *See Vet Tech II*, 138 Fed. Cl. at 129. The OHA reversed the Area Office's size determination, but this court reversed the OHA's decision and upheld the Area Office's determination that MDW was a small business. *Id.*

The plaintiff acknowledges that the facts of this case differ from the facts in *Vet Tech I*. (ECF 38-1 at 25.)  Nonetheless, Darton argues that the holding in *Vet Tech I* reflects an instance in which an SBA Area Office arbitrarily refused to consider evidence rebutting economic dependence.  According to Darton, "*Vet Tech I* stands for the proposition that the Area Office is bound to consider other evidence presented to rebut the presumption of economic dependence. Here, contrary to the law, the Area Office did not apply that precedent." (*Id.* at 27.)

The defendant reiterates that none of the facts presented in *Vet Tech I* are present here. Darton only had one, as opposed to multiple, contracts with Sonoran and it did not have a backlog of non-Sonoran work; indeed, Darton has no non-Sonoran work.  Crucially, the defendant emphasizes that the government did not direct Sonoran to subcontract with Darton. The defendant argues that, unlike the SBA's failure in *Vet Tech I* to consider all the evidence relevant to MDW's economic dependence, here the "OHA clearly considered all of Darton's arguments and evidence and determined that the [Area Office's] decision was correct." (ECF 41 at 24.)

The Court agrees with the plaintiff that this court's decision in *Vet Tech I* supports the proposition that the SBA may consider factors other than a firm's length of time in business or the number of contracts a firm has secured.  The Court has already held in IV.A, *supra*, that a concern may present evidence other than those two factors the SBA regulation explicitly provides as examples of methods to rebut the 70-percent rule's presumption of economic dependence.  The usefulness to the plaintiff of the decision in *Vet Tech I* stops there.  As the plaintiff acknowledges, the facts presented in *Vet Tech I* are entirely unlike those presented here. Unlike the evidence ignored by the SBA in *Vet Tech I* that went directly to MDW's economic dependence on ECS, the evidence presented by Darton does not go to the question of its economic dependence on Sonoran, but only to its asserted separateness from Sonoran.  This distinction is critical, and it supports the OHA's decision to uphold the Area Office's finding that the *Vet Tech* cases do not apply and do not support Darton's claim.

### c.    New Rule

The plaintiff argues that a revision the SBA made to 13 C.F.R. § 121.103(f)(2) after Darton submitted its proposal supports its interpretation of the regulatory scheme.

On October 16, 2020, the SBA announced an amendment to 13 C.F.R. § 121.103(f)(2)(i), effective November 16, 2020.[7] 85 Fed. Reg. 66,146, 66,147 (Oct. 16, 2020).  The new rule provides:

> This presumption may be rebutted by a showing that despite the contractual relations with another concern, the concern at issue is

---

[7] The final rule became effective on November 16, 2020, less than a month before the Area Office issued its size determination.  85 Fed. Reg. at 66,147.  The plaintiff acknowledges that the new rule was not in effect at the time of its proposal.  (AR 38-1 at 32.)

> not solely dependent on that other concern, such as where the concern has been in business for a short amount of time and has only been able to secure a limited number of contracts *or where the contractual relations do not restrict the concern in question from selling the same type of products or services to another purchaser*.

13 C.F.R. § 121.103(f)(2)(i) (effective November 16, 2020) (new text emphasized). The Federal Register notice explained that "[c]ommenters supported this change, appreciating that SBA seemed to be making economic dependence more about the issue of control." 85 Fed. Reg. at 66,147.

The plaintiff argues that the new rule and preamble "clarify the SBA's original intent, as reflected in the 2016 Preamble, that the 'SBA believes that firms should be permitted to make any arguments and provide any evidence that they believe demonstrates that no affiliation should be found.'" (ECF 38-1 at 33 (citing 81 Fed. Reg. at 34,252).) The new rule "adds to the myriad of ways in which the 70% presumption could be rebutted." (*Id.*)

The OHA rejected the plaintiff's argument premised on the new rule. The Court agrees that the new regulation is inapplicable to the size determination in this case because it became effective after the solicitation, bid, and size determination at issue here.

The Court finds that the SBA's decision to amend the rule undercuts Darton's position. If the prior version of the rule supported Darton's proposed reading, there would have been no reason for the SBA to amend the rule. Instead, the reading of the prior rule that was applied to find that Darton was affiliated with Sonoran appears to have generated concern among small businesses because it focused too much on control. *See* 85 Fed. Reg. at 66,147. Darton appears to be a victim of the constrictive application of the prior version of the rule that may have prompted the SBA to amend it. If the prior version of the rule meant what Darton argues it did, the newly added language of the rule would in effect be surplusage. The Court will not read the prior version of the rule to mean what the new version of the rule means on its face.[8] *See Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 57-58 (2006) ("We refuse to interpret the [statute] in a way that negates its recent revision, and indeed would render

---

[8] In fact, the new version of the rule may have the effect of forestalling the dismal future for Darton that its counsel advanced during the oral argument as the outcome of a decision adverse to Darton. Counsel asserted that a decision upholding the OHA determination that Darton is affiliated with Sonoran would have the perverse effect of not allowing Darton to grow because it could never compete for contracts as a SDVOSB. Due to the new rule, however, Darton would not be so burdened. The rule as it now reads would allow Darton to present the type of evidence it did in this case, but that evidence would have new salience. The new rule would not guarantee that Darton would be found to be unaffiliated with Sonoran in the future, but it allows Darton a meaningful chance to make this argument anew.

it a largely meaningless exercise."); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1299 (11th Cir. 2010) (explaining that "'changes in statutory language generally indicate an intent to change the meaning of the statute'" (quoting *DIRECTV, Inc. v. Brown*, 371 F.3d 814, 817 (11th Cir. 2004))). The principle of these cases, applied to statutory changes, applies equally to regulatory changes. *Tesoro Hawaii Corp. v. United States*, 405 F.3d 1339, 1346 (Fed. Cir. 2005) (noting that a court "construe[s] a regulation in the same manner as we construe a statute").

The prior regulation was unambiguous, and "when there is no ambiguity in the meaning of the regulation, 'it is the duty of the courts to enforce it according to its obvious terms and not to insert words and phrases so as to incorporate therein a new and distinct provision.'" *Id.* at 1347 (quoting *Gibson v. United States*, 194 U.S. 182, 185 (1904)). The Court will not construe the unambiguous language of the applicable regulation in a manner that reads into it the change made by the newer version of the regulation.

### d.    Motion to Supplement

Finally, the Court rejects Darton's argument that the OHA erroneously denied its motion to supplement the record. The OHA found that the items Darton sought to introduce to the record had not been presented to the Area Office. The OHA may admit new evidence on appeal if good cause is established for the submission. 13 C.F.R. § 134.308(a). Based on the Court's review of the record, the materials before the OHA, and the plaintiff's arguments, Darton did not demonstrate good cause for the admission of additional evidence because the materials would not have clarified the facts or strengthened the plaintiff's appeal. None of Darton's additional materials went to the crucial issue, which was the question of its economic dependence on Sonoran. Darton can show no prejudice from the OHA's refusal to allow the additional materials into the record.

### 2.    Evidence of Control

The OHA noted that "[w]here there is such heavy dependence during the three years preceding certification, the challenged firm must demonstrate . . . the alleged affiliate no longer has the power to control it." (AR 1364.) The plaintiff and defendant agree that the issue of control is central to the finding of affiliation. (*See* ECF 38-1 at 15; ECF 41 at 16.) The parties disagree whether Darton is under the control of Sonoran.

Darton argues that, although its contractual relationship with Sonoran accounts for 100 percent of its revenue, this fact alone should not establish control. It argues that the SBA ignored evidence that it is entirely separate from Sonoran. Specifically, Darton argues that the SBA and the OHA erroneously dismissed as irrelevant its evidence of its independence as provided for in a declaration by Darton's president:

> (1) Darton is not dependent on Sonoran; (2) Sonoran has no ownership interests in Darton nor is it involved in Darton's management; (3) Darton and Sonoran are not parties to any joint ventures, (4) Darton has no financial dependence on Sonoran; (5) Darton and Sonoran do not share or provide loans to each other; (6)

19

> they do not share or provide resources, equipment, locations, office space, or employees with one another; (7) they are located in different states; (8) Darton manages its own staffing, invoicing and contract administration and compliance; (9) no employee of either has worked with the other; and (10) Darton does not rely on Sonoran's expertise.

(ECF 45 at 7 (citing AR 716-17).)

Darton also argues that the regulation's term "solely dependent" in the phrase "the concern at issue is not solely dependent on that other concern" refers to general, rather than economic, dependence. 13 C.F.R. § 121.103(f)(2)(i). Darton argues from the plain text of the regulation. It proffers that had the SBA intended for "sole dependence" to mean "sole economic dependence," the SBA would have included the word "economic" in subparagraph (i), as it did elsewhere in Title 13 of the Code of Federal Regulations. (ECF 45 at 4.)

The defendant counters that contractual relationships are a sufficient basis to establish control by one firm over another pursuant to § 121.103(a)(2).[9] Pursuant to this regulation, Sonoran does not need to exercise its control; only the potential to exert control must be present for control to exist. *See id.* § 121.103(a). Because Sonoran can eliminate Darton's entire source of revenue by cancelling its subcontract with Darton, the plaintiff is wholly under the control of Sonoran. Moreover, as explained above in IV.A., the question of control is fundamentally about economic dependence; because 13 C.F.R. § 121.103(f)(2)(i) is a subparagraph of section 121.103(f)(2), subparagraph (i) cannot be read independent from section 121.103(f)(2) and the word "economic" need not be repeated.

As the defendant-intervenor adds, the SBA has repeatedly focused on the power to control versus actual control. *See Size Appeal of Metropolitan Area Contractors*, SBA No. SIZ-4229 at 6 (1996) ("[u]nder well-established case precedent, even absent common management, common ownership, or common salaries between two firms, where a great majority of a challenged firm's earnings are derived from a subcontract with a large firm, the latter firm has the power to control the challenged firm"); *Size Appeal of Eagle Consulting Corp.*, SBA No. SIZ-5267 (Aug. 19, 2011) ("a contractual relationship between two concerns with one heavily dependent for its revenues on another is alone sufficient to support a finding of affiliation, even if there are no other ties between the firms" (quoting *Size Appeal of Incisive Technology, Inc.*, SBA No. SIZ-5122 (2010))).

---

[9] As a general principle of affiliation, subparagraph (2) explains that "SBA considers factors such as ownership, management, previous relationships with or ties to another concern, *and contractual relationships*, in determining whether affiliation exists." 13 C.F.R. § 121.103(a)(2) (emphasis added).

For two reasons, the Court finds that the OHA had a rational basis for finding that Darton was economically dependent on Sonoran.

First, the Court finds that, contrary to the plaintiff's assertion, the regulation refers specifically to economic dependence. Darton's evidence had to relate to economic control, not general measures of its corporate independence or lack of dependence on Sonoran. Darton's evidence did not establish its economic independence; rather, its evidence was largely immaterial to that question, and its contractual relationship with Sonoran suggests just the opposite.

Second, the Court finds that the OHA was justified in relying on its own precedent. Numerous cases before the SBA have established that "where a great majority of a challenged firm's earnings are derived from a subcontract with a large firm, the latter firm has the power to control the challenged firm." *Metropolitan Area Contractors*, SBA No. SIZ-4229 at 6. The court affords "special deference" to the decisions of the OHA due to the "'quasi-technical administrative expertise and . . . familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme.'" *Eagle Design*, 57 Fed. Cl. at 273 (quoting *Ceres Env't. Servs.*, 52 Fed. Cl. at 33 (citation omitted)). The SBA's interpretation that a contractual relationship that constitutes the entirety of a firm's revenue is highly probative of the power to control that firm is not unreasonable or irrational. Accordingly, the Court finds it was not arbitrary or capricious for the OHA to find that Sonoran had the power to control Darton through their contractual relationship.

## V.    CONCLUSION

The Court finds that the OHA's decision upholding the Area Office's determination that Darton was affiliated with Sonoran by virtue of the SBA's "identity of interest" rule was not arbitrary or capricious. The OHA reasonably concluded that Darton did not present sufficient evidence to rebut the presumption of affiliation. Darton received 100 percent of its revenue from Sonoran. It had not been in business for a short period of time, and its evidence failed to demonstrate a break that would have made it less dependent on Sonoran. With respect to other evidence to rebut economic dependence, Darton failed to provide persuasive legal or factual evidence to support its arguments.

The Court upholds the OHA's decision affirming the Area Office's finding. Because the plaintiff has not succeeded on the merits, the Court is unable to award bid preparation and proposal costs pursuant to 28 U.S.C. § 1491(b)(2). The Court denies injunctive relief.

The Court grants the defendant's and defendant-intervenor's motions for judgment on the administrative record and denies the plaintiff's motion. The Court will issue an order in accordance with this memorandum opinion.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**